IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LUIS ROBLES,
      Petitioner,

vs.                          Case No.:  5:13cv6/MCR/EMT

N.C. ENGLISH, WARDEN,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (doc. 1).  Respondent filed a response (doc. 12), and Petitioner filed a reply (doc. 15).

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND

Petitioner is a prisoner of the Federal Bureau of Prisons ("BOP"), housed at the federal correctional institution in Marianna, Florida (*see* doc. 1 at 1).[2]  He challenges a prison disciplinary decision which resulted in the disallowance of good conduct time and loss of certain privileges (doc. 1, Ex. 2).

The following facts are undisputed by the parties.  On September 3, 2010, Incident Report No. 2062405 was filed charging Petitioner with engaging in or participating in a group

---

[1] N.C. English succeeded Paige Augustine as Warden of F.C.I. Marianna, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

demonstration, a violation of the BOP's Prohibited Act Code ("PAC") 212 (doc. 12 at 17). The incident report, written by Martin Carrillo, an "SIA," alleged the following:

> On September 03, 2010, the SIS office completed its investigation into an incident that occurred from 6-22-10 thru 07-06-2010. This incident began initially as a report of a planned assault on a staff member but quickly evolved into a group demonstration by the inmates housed in the C-block unit, inmate non-compliance, a work and food strike and continued threat of escalation to a large scale disturbance riot and continuing threat of staff assault.
>
> Specifically, the investigation revealed that you Robles, Luis #11799-280 along with approximately 7 other inmates from the D2 housing unit were observed and overheard talking thru the interior doors and going to other inmates in the respective housing units and instructing them not to eat breakfast the next day. The next day June 24, 2010 for the breakfast meal, inmates in your unit began refusing to go to the dining room to eat. You were identified by Correctional Officer Stephanie Ramirez during the incident through a quarters card picture spread of 80 inmates along with the other inmates.
>
> *Note* This incident occurred during an ongoing inmate group demonstration.

(doc. 1-1 at 2; doc. 12 at 17). Petitioner received a copy of the incident report on September 3, 2010, at 9:32 p.m. (doc. 1 at 8; doc. 12 at 17). Upon initial investigation and review by the Unit Disciplinary Committee on September 7, 2010, the charge was referred to the Discipline Hearing Officer ("DHO") (*id.* at 18). On September 7, 2010, Petitioner received a Notice of Discipline Hearing Before the DHO (*id.* at 21). Petitioner indicated on the Notice that he wished to have Chaplain J. McGuire as a staff representative at the hearing (*id.* at 21). He also indicated he did not wish to call any witnesses at the hearing (*id.*). Also on September 7, Petitioner received a notice of his rights, notifying him that he had the right to prior notice of the charge, the right to staff representation at the hearing, the right to call witnesses and present documentary evidence, the right to present a statement in his defense or remain silent, the right to be present at the hearing, the right to be advised of the hearing officer's written decision, and the right to appeal the decision (*id.* at 20).

The disciplinary hearing was conducted by DHO A. Zarate on October 27, 2010 (doc. 1-1 at 45–48; doc. 12 at 13–16). Chaplain McGuire was not available for the hearing but provided a written memorandum (*id.*). Petitioner was advised of the option to postpone the hearing, but Petitioner chose to proceed without a staff representative (*id.*). Petitioner testified on his own behalf (*id.*). He stated his housing unit never refused any meals (*id.*). He testified that Major Fernandez thanked the inmates in Petitioner's unit for not getting involved and returned their television and recreation privileges because they were cooperating. Petitioner testified he received a "common fair tray," and signed a written acknowledgment that he received a tray at each meal (*id.*). Petitioner testified he was Jewish and trying to organize a visit between the Rabbi and the inmates (*id.*). He

testified he was new in E-Pod when this incident happened (*id.*). He stated, "Why would I get involved in something like this?" (*id.*).

Hearing Officer Zarate also considered Officer Carrillo's written statement, included in his incident report, set forth *supra* (doc. 1-1 at 45–48; doc. 12 at 13–16). And he considered Officer Ramirez's statement that on June 23, 2010, at approximately 10:00 p.m., she observed certain inmates in the D2 housing unit from E, G, and H talking to each other through the interior doors and then going to other inmates in their respective units and instructing inmates not to eat breakfast the next day (*id.*). Officer Ramirez stated she identified Petitioner as one of the inmates communicating through the doors and then instructing other inmates not to eat breakfast (*id.*).

Hearing Officer Zarate's written report/decision stated that the greater weight of the evidence showed that Petitioner committed the infraction, based upon the statements of Officers Carrillo and Ramirez (doc. 1-1 at 45–48; doc. 12 at 13–16). The hearing officer imposed the following sanctions: disallowance of 27 days of good conduct time, placement in disciplinary segregation for 30 days, and loss of commissary privileges, phone privileges, and visitation privileges for one year (*id.*). He also explained the reasons for each sanction (*id.*). The hearing officer additionally recommended that Petitioner be transferred to another institution (*id.*).

II.   ANALYSIS

Petitioner raises the following four challenges to the disciplinary decision:

Ground One: Due Process violation(s)—lack of proper notice—there are multiple instances.

Ground Two: Due Process violation—lack of proper notice, denied chance to be heard, and denied processes due pursuant to policy and C.F.R as well as law. There are multiple instances.

Ground Three: Due Process violation—actual innocence of charge, lack of any factual or actual evidence at all, presentation of false allegations, and lack of chance to be heard. There are multiple instances.

Ground Four: Due Process violation—lack of proper written notice. Multiple counts.

(doc. 1 at 3–5). Petitioner sets forth more specific arguments in his supporting memorandum (*id.* at 7–16). He argues several procedural due process violations occurred, including the following: (1) he was served with the incident report three months after the alleged incident, contrary to BOP policy, which requires the inmate to be served with the charge no more than 24 hours after the incident is committed or becomes known by staff; (2) the hearing officer was not impartial; and (3) the decision was based upon evidence not disclosed to him prior to or during the hearing,

specifically a case investigative report from SIS Case No. 02-6222010, dated April 12, 2010, involving an investigation of a group demonstration, work/food strike, threat of assault, and disturbance/riot plan, which Petitioner obtained in September of 2011, through a Freedom of Information Act ("FOIA") request to the BOP (*id.* at 8–15, 24–61). He also argues there was insufficient evidence to support the disciplinary decision (*id.* at 10–14). Petitioner additionally presents a facial challenge to the BOP policy he was convicted of violating, contending it is unconstitutionally vague (*id.* at 9–10).

Respondent contends Petitioner was not denied due process under either BOP policy or federal law (doc. 12 at 7–9). Respondent argues the record establishes Petitioner received the procedural due process protections to which he was constitutionally entitled under <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (*id.*). Furthermore, there was sufficient evidence to show that Petitioner committed the disciplinary infraction; therefore, substantive due process was satisfied under <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (*id.*). Respondent also argues Prohibited Act Code 212 is not unconstitutionally vague (*id.* at 9–11).

A.    Procedural Due Process and Sufficiency of the Evidence

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of due process rights to which a defendant in a criminal proceeding is entitled does not apply. <u>Wolff</u>, 418 U.S. at 563–67. Once prison disciplinary charges are filed, the Supreme Court has outlined that due process requires: (1) written notice of the charges be given to the inmate at least twenty-four hours before his appearance before the hearing committee, (2) a written statement by the hearing committee citing the evidence relied on and the reasons for the disciplinary action be given to the inmate, and (3) the opportunity for the inmate to call witnesses and present documentary evidence in his defense, so long as institutional safety and correctional goals are not jeopardized. *Id.* There is no constitutional right to confront and cross-examine witnesses. *Id.* at 567–69.

Additionally, in order to satisfy due process, a decision of a prison disciplinary team must be supported by "some evidence" in the record. <u>Hill</u>, 472 U.S. at 455; <u>Young v. Jones</u>, 37 F.3d 1457 (11th Cir. 1994); <u>Inglese v. Warden, U.S. Penitentiary</u>, 687 F.2d 362, 363 (11th Cir. 1982). Furthermore, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is <u>any evidence</u> in the record that could support the conclusion reached by the disciplinary board." <u>Hill</u>, 472 U.S. at 455 (emphasis added).

Petitioner failed to show he was denied the enumerated procedural protections required by Wolff.  He received notice of the charge and notice of the hearing at least 24 hours prior to the hearing (doc. 12 at 17, 21).  At the hearing, Petitioner was afforded the opportunity to call witnesses, testify on his own behalf, and present documentary evidence in his defense (*id.* at 13–16).  After the hearing, he received a written statement by the hearing officer citing the evidence relied on and the reasons for the disciplinary action (*id.*).

Further, although prison disciplinary proceedings require an impartial hearing board, this requirement is met so long as members of the disciplinary board hearing the case have not participated in the case at issue as investigative or reviewing officers.  Wolff, 418 U.S. at 572 n.20; *compare* Diercks v. Durham, 959 F.2d 710, 713 (8th Cir. 1992) (due process violation at disciplinary hearing when complainant was member of board hearing case) *with* Pedraza v. Meyer, 919 F.2d 317, 320 (5th Cir. 1990) (per curiam) (hearing not inadequate when disciplinary board official's only involvement in filing of complaint was receipt of incident report and intercepted letters).  In the instant case, Petitioner does not allege that Hearing Officer Zarate investigated or authorized the disciplinary charge.  Therefore, Petitioner failed to show a violation of his procedural due process rights.

Additionally, the evidence was sufficient to support the hearing officer's decision.  As previously discussed, the hearing officer based his decision on Officer Carrillo's written statement that institutional security staff investigated an incident that occurred during a two-week period, which initially began as a report of a planned assault on a staff member but quickly evolved into a group demonstration by the inmates housed in the C-block unit, including an organized food strike, and that during this period Petitioner Robles was observed by Officer Ramirez talking to other inmates through the interior doors and then going to other inmates in his housing unit and instructing them not to eat breakfast the next day.  This constituted sufficient evidence under Hill to support the disciplinary decision.  *See* Hill, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *see also* Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation . . . "); Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993) (same).  Given the fact that there was "some evidence" upon which the hearing officer could rely, as well as the disciplinary (as distinguished from criminal) nature of the proceedings and sanctions, the undersigned concludes

there was sufficient evidence upon which to base a finding of Petitioner's guilt of the charge to satisfy due process.

To the extent Petitioner argues that alleged violations of BOP Program Statements and federal regulations by the investigating officer and the hearing officer provide a basis for habeas relief independent of his due process claims, his claim is without merit. A claim that the BOP violated its own Program Statements, when the Program Statements were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas petition. *See* <u>Reeb v. Thomas</u>, 636 F.3d 1224, 1227 (9th Cir. 2011). Program Statements are BOP policies, guidelines or interpretative rules, not substantive law. *Id.* (citing <u>Jacks v. Crabtree</u>, 114 F.3d 983, 985 n.1 (9th Cir. 1997); <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995) (characterizing BOP program statements as simply interpretive rules)); BOP Program Statement 1221.66, Chps. 1.2, 2.1 (referring to BOP program statements as "policies and procedures," not rules); <u>Miller v. Henman</u>, 804 F.2d 421, 426 (7th Cir. 1986); *see also* <u>United States v. Wilson</u>, 413 F.3d 382, 389 (3d Cir. 2005) (Department of Justice guidelines and policies do not create enforceable rights for criminal defendants); <u>United States v. Craveiro</u>, 907 F.2d 260, 264 (1st Cir. 1990) ("[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party."). Further, although an agency's failure to follow its own policies or non-statutory regulations may constitute a deprivation of liberty without due process, an agency's failure to comply in every respect does not in every case require the grant of relief; instead, courts examine the specific facts to determine if the petitioner suffered substantial prejudice, that is, prejudice in the constitutional sense. *See* <u>Mullen-Cofee v. I.N.S.</u>, 976 F.2d 1375, 1380 (11th Cir. 1992) (alien's challenge to deportation decision, on ground that immigration judge failed to comply with applicable regulations, did not entitle him to relief where alien failed to demonstrate that alleged misconduct resulted in the "substantial prejudice" necessary to prevail in due process challenge to deportation proceeding); <u>Gov't of the Canal Zone v. Brooks</u>, 427 F.2d 346, 347–48 (5th Cir. 1970)[3]; <u>Turner v. Henman</u>, 829 F.2d 612, 614 (7th Cir. 1987) (habeas petitioner's challenge to United States Parole Commission's determination of petitioner's parole date, based solely on Commission's alleged failure to follow its regulations, did not entitle him to habeas relief where petitioner failed to show that the procedures used by the Commission were unconstitutional); <u>Derrickson v. St. Louis Bd. of Educ.</u>, 703 F.2d 309, 315 (8th Cir. 1983) (finding that, as a matter of

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

law, the defendants' alleged deviations from the regulations did not amount to a constitutional deprivation); *see also, e.g.*, <u>Sharma v. Drug Enforcement Agency</u>, No. 11-10963, 2013 WL 791396, at *4 (11th Cir. Mar. 4, 2013) (unpublished) (even where a governmental entity fails to follows its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced); <u>Mackey v. Fed. Bureau of Prisons</u>, 440 F. App'x 373 (5th Cir. 2011) (denying habeas relief where petitioner challenged disciplinary decision of BOP but failed to establish that any of the alleged violations of federal regulations and/or BOP policy statements resulted in the required prejudice); <u>Terry v. Fondren</u>, No. 08-1059 (PJS/SRN), 2008 WL 5071077, at *5–6 (D. Minn. Nov. 24, 2008) (BOP's failure to comply with regulations regarding provision of incident report to inmate within 24 hours did not warrant habeas relief where inmate received adequate notice of charges against him and other due process requirements set forth in <u>Wolff</u>).

Here, Petitioner failed to show that the investigating officer's failure to comply with time deadlines set forth in the federal regulations and BOP Program Statements entitle him to relief. With regard to Petitioner's allegedly untimely receipt of the incident report, the federal regulations and Program Statements provide that an inmate "will ordinarily" receive the incident report within 24 hours of staff becoming aware of his involvement in the incident. 28 C.F.R. § 541.5; Program Statement 5270.09. Even though Petitioner may have received the incident report three months after staff became aware of his involvement in the group demonstration, and the reason for the delay was not documented in the discipline record, Petitioner received notice of the charge and hearing at least 24 hours prior to the hearing, which is all that is required to satisfy due process concerns. Therefore, he failed to demonstrate he is entitled to habeas relief on this claim.

Additionally, the record refutes Petitioner's contention that the hearing officer relied upon evidence undisclosed to him prior to or during the hearing. Petitioner contends he did not obtain a copy of the SIS investigation report in Case No. 02-6222010 until several months after the hearing, after he submitted a FOIA request to the BOP. The hearing officer's report states that in addition to Officer Carrillo's investigation as described in his incident report, he relied upon the following evidence in reaching the disciplinary decision:

> <u>The SIS investigation, page 12</u>, Officer Ramirez states that on 06-23-2010, at approximately 10:00 p.m., [s]he observed different inmates in the D2 housing unit from E, G, and H talking to each other through the interior doors and then going to other inmates in their respective units and instructing inmates not to eat breakfast the next day. I identified the following inmate involved using the quarter picture cards of the inmates housed in the D2 housing unit and you Robles, Luis being one of them.

(doc. 12 at 15) (emphasis added). Page 12 of the SIS investigation report, which is the report obtained by Petitioner in response to his FOIA request, states, in relevant part:

> Stephanie Ramirez, Correctional Officer, Evening watch, June 23, 2010
>
> Correctional Officer Ramirez stated that on 06/23/2010, at approximately 10:00 p.m., [s]he observed different inmates in the D2 housing unit from E, G, and H talking to each other through the interior doors and then going to other inmates in their respective units and instructing inmates not to eat breakfast the next day. I [Ramirez] identified the following inmates involved using the quarter picture cards of the inmates housed in the D2 housing unit:
>
> Robles, Luis #11799-280
> . . . .

(doc. 1-1 at 35). The incident report notifying Petitioner of the disciplinary charge included information that an SIS investigation was conducted concerning incidents that occurred from June 22, 2010 through July 6, 2010 (doc. 12 at 17). The incident report stated that the SIS investigation began as an investigation of a report of a plan to assault on a staff member but quickly evolved into a group demonstration by the inmates housed in the C-block unit, inmate non-compliance, a work and food strike, a continued threat of escalation to a large scale disturbance riot, and a continuing threat of staff assault (*id.*). The incident report included all of the facts regarding Officer Ramirez's identifying Petitioner as an inmate involved in organizing a food strike (*id.*). This record demonstrates Petitioner was apprised of the evidence against him prior to the disciplinary hearing. Therefore, he failed to show a due process violation.

B.    Constitutionality of Prohibited Act Code 212

Petitioner contends his disciplinary conviction violates due process because the provision of the offense code he was convicted of violating, Prohibited Acts Code ("PAC") 212, Engaging in or Participating in a Group Demonstration, is unconstitutionally vague.

As noted by the Eleventh Circuit, "[s]ome disagreement has appeared lately among members of the Supreme Court on exactly how high the threshold for facial invalidation should be set." Fla. League of Prof'l Lobbyists, Inc. v. Meggs, 87 F.3d 457, 459 (11th Cir. 1996). That disagreement persists:

> Under United States v. Salerno, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987), a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.*, that the law is unconstitutional in all of its applications. *Id.* at 745, 481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697. While some Members of the Court have criticized the Salerno formulation, all agree that a facial challenge must fail where the statute has a "'plainly legitimate sweep.'" Washington v. Glucksberg, 521 U.S. 702, 739–740,

and n. 7, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (STEVENS, J., concurring in judgments).

Wash. State Grange v. Wash. State Republican Party, 552 U.S. 449,128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008).

A thorough review of federal law governing a vagueness challenge to a prison disciplinary regulation is found in Anderson v. Crosby, No. 5:04cv164/SPM/MD, 2005 WL 3357220 (N.D. Fla. Mar 25, 2005) (unpublished), *Report and Recommendation Adopted*, No. 5:04cv164/RS/MD, 2005 WL 3357182 (N.D. Fla. Dec. 9, 2005) (unpublished). Anderson involved a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a disciplinary report for refusing to obey an order, and thus the issue came to the court through the restrictive lens of habeas review.[4] A central claim was that a Florida prison rule, that a Florida prisoner may be disciplined for "disobeying verbal or written order—any order given to an inmate or inmates by a staff member of other authorized person," violated due process because it was vague. Anderson, 2005 WL 3357220, *6 (citing Fla. Admin. Code § 33–601.314, subsection 6–1). Unlike the case at bar, Inmate Anderson did not present a facial challenge to the rule; he instead challenged the rule as applied to him. *Id.* at *3. Inmate Anderson was on a work detail and had been ordered to carry a water cooler up a hill; he refused and was disciplined. *Id.* at *1. The habeas claim was rejected. The court determined, "There is nothing vague about a regulation requiring an inmate to obey the orders of a corrections officer. A reasonable person reading the rule would have fair warning that failing to follow an order to perform a work-related task while on work assignment violates this rule. *Id.* at *8.

A troubling issue in Anderson was whether vagueness cases dealing with criminal laws should apply to prison rules. That analysis is accurate and well-written, and will be incorporated here at length:

> The Supreme Court has not set forth a specific approach for evaluating challenges to prison regulations on vagueness grounds. The applicable Supreme Court law pertaining to the degree of vagueness tolerated by the Constitution in criminal statutes is well settled:
>
> > That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions

---

[4] A petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d) (1).

> of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

Connally v. General Construction Co., 269 U.S. 385, 391, 46 S. Ct. 126, 127, 70 L. Ed. 322 (1926); Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S. Ct. 618, 619, 83 L. Ed. 888 (1939) (The applicable standard when a criminal statute is being challenged as unconstitutionally vague is Connally). Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the type the kind [sic] of notice that will enable ordinary people to know what it prohibits. Second it may authorize or encourage arbitrary and discriminatory enforcement. City of Chicago v. Morales, 527 U.S. 4156, 119 S. Ct. 1849, 1859, 144 L. Ed. 2d 67 (1999).

Some courts have applied this same standard to vagueness challenges to prison regulations. *See, e.g.*, Chatin v. Coombe, 186 F.3d 82, 89 (2d Cir. 1999) (applying same vagueness analysis applicable to criminal statutes); Newell v. Sauser, 79 F.3d 115, 117–18 (9th Cir. 1996) (citing cases); Glano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (applying Connally standard to vagueness challenge to prison regulation); Rios v. Lane, 812 F.2d 1032, 1038 (7th Cir.), *cert. denied*, 483 U.S. 1001, 107 S. Ct. 3222, 97 L. Ed. 2d 729 (1987) (applying Connally and noting further that "where prohibited conduct does not carry with it its own indicia of wrongdoing the need for clearly drawn prison regulations is particularly acute"); Falkiewicz v. Grayson, 110 Fed. Appx. 491, 2004 WL 1888872, at *2 (6th Cir. 2004) (approving district court's application of City of Chicago); Sands v. Wainwright, 357 F. Supp. 1062 (M.D. Fla.), *rev'd on other grounds*, 491 F.2d 417 (5th Cir. 1973); Aiello v. Litscher, 104 F. Supp.2d 1068, 1082 (W.D. Wis. 2000) (applying City of Chicago to vagueness challenge to prison regulation); Arey v. Robinson, 819 F. Supp. 478 (D. Md. 1992) (applying Connally standard). However, other courts have applied a less rigorous application of due process guarantees in evaluating prison regulations. *See, e.g.*, Adams v. Gunnell, 729 F.2d 362, 369 (5th Cir. 1984) (citing Grayned [v. City of Rockford, 408 U.S. 104 (1972)] and Lanzetta, but implying that prison regulations are subject to a less strict vagueness test); Meyers v. Aldredge, 492 F.2d 296, 310 (3d Cir. 1974) (adopting a more relaxed vagueness standard applicable to prison regulations and holding that vagueness principles must be applied in light of the legitimate needs of prison administration; "Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions."); Wolfel v. Morris, 972 F.2d 712, 714 (6th Cir. 1992) ("[T]he degree of specificity required in prison regulations is not the same as that required in other circumstances . . . ."); El–Amin v. Tirey, 817 F. Supp. 694, (W.D. Tenn. 1993) (while due process generally prohibits excessively vague laws, the degree of specificity required when courts analyze whether prison regulations comply with due process is not the same as that required for those laws applicable to free citizens). The court need not resolve the issue here, because even applying the standard more favorable to petitioner—the standard requiring greater specificity—petitioner is not entitled to relief.

2005 WL 3357220, at *5 (footnote omitted).

As this district court opined in <u>Sweet v. McNeil</u>, No. 4:08cv17/RH/WCS, 2009 WL 903291 (N.D. Fla. Mar. 31, 2009), the Eleventh Circuit's unpublished decision in <u>Smith v. Fla. Dep't of Corr.</u>, 318 F. App'x 726 (11th Cir. 2008) signals it is unlikely the Eleventh Circuit will apply the stricter due process standard applicable to criminal laws when deciding whether a prison disciplinary rule is void for vagueness. In <u>Smith</u>, the prisoner presented a First Amendment challenge to § 33–601.314, subsection 6–1, which punishes "disobeying verbal or written order—any order given to an inmate or inmates by a staff member or other authorized person." *Id.* at 727. This is the same rule that was challenged in <u>Anderson v. Crosby</u>, *supra*. The Eleventh Circuit ruled:

> Unlike the strict standards of scrutiny applicable to the constitutional rights of persons in free society, the Supreme Court has adopted a deferential standard for determining whether a prison regulation violates an inmate's constitutional rights," and "[a] prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." <u>Hakim v. Hicks</u>, 223 F.3d 1244, 1247 (11th Cir. 2000). In examining the reasonableness of the regulation, we use the standard announced by the Supreme Court in <u>Turner v. Safley</u>, 482 U.S. 78, 89, 91, 107 S. Ct. 2254, 2261, 2263, 96 L. Ed. 2d 64 (1987), and consider the following factors:
>
>> (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns.
>
> <u>Hakim</u>, 223 F.3d at 1247–48.
>
> The district court properly dismissed Smith's facial constitutional challenge to the rule. First of all, there is a rational connection between the regulation and the legitimate governmental interest of maintaining secure prisons. Additionally, Smith's complaint demonstrates there are alternative means by which he can exercise his First Amendment rights. Amending the rule to require prisoners to obey only "legal" orders could lead to a strain on guards and resources, and Smith does not suggest that the disobeying order rule is an exaggerated response to the overriding need to maintain secure prisons. Moreover, because the disciplinary report was issued for his refusal to follow an order, and not for an arbitrary reason or in retaliation for exercising his right of free speech, the disobeying order rule was not applied in an unconstitutional manner.

*Id.* at 729. The Eleventh Circuit subsequently relied upon this analysis in two more unpublished cases where Inmate Smith reasserted a facial challenge to the constitutionality of the regulation on First Amendment grounds. *See* <u>Smith v. Fla. Dep't of Corr.</u>, 375 F. App'x 905, 911 (11th Cir. 2010) (unpublished); <u>Smith v. Sec'y, Dep't of Corr.</u>, 318 F. App'x 726, 729 (11th Cir. 2008) (unpublished).

In summary, the better-reasoned position is that some deference is due prison administrators in determining whether a prison disciplinary rule is void for vagueness. That is, after all, the standard required when a prison regulation impinges upon a First Amendment interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987); Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

PAC 212 provides that "[e]ngaging in or encouraging a group demonstration" is a prohibited act. 28 C.F.R. § 541.3, Table 1 (2011). One other district court has considered a vagueness challenge, albeit an "as applied" challenge, to PAC 212. In Antonelli v. Rios, No. 06-283-GFVT 2009 WL 790171 (E.D. Ken. Mar. 24, 2009), Inmate Antonelli was convicted of PAC 212 for providing copies of a letter, which he did not author, to other inmates in an effort to have them submit administrative grievances and/or lawsuits against prison staff. Id. at *2. Antonelli contended PAC 212's prohibition against "encouraging a group demonstration" was unconstitutionally vague, because it did not give him fair notice that his conduct would violate that section. Id. at 3. He argued he was merely acting as a conduit for information to other prisoners. Id. at *5. However, reports from BOP staff members indicated Antonelli was not merely providing the letter to other inmates, he was actively urging them to use the letter to file administrative grievances or civil actions against two particular staff members. Id. The district court determined:

> Antonelli could certainly reasonably foresee that such conduct could be characterized as "encouragement."
>
> The use Antonelli urged for the letter, as documentary support to be used in conjunction with the filing of multiple lawsuits and grievances, does not invoke the image of a "group demonstration," as that phrase might commonly be understood to describe a political march or protest. But like a "demonstration," Antonelli's goal was to pursue a coordinated effort by multiple inmates to discredit Leukefeld and Hoover [two staff members]. Although Antonelli's activities were plainly not the kind of quintessential "demonstration" expressly proscribed by Code 212, they were, much like a demonstration, clearly a coordinated group activity designed to express a shared view regarding the counselors' qualifications. Because the BOP's listing of Prohibited Activities need not identify each and every activity which will result in sanctions with "meticulous specificity," United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32 (1963), the Court finds that Code 212 is not unconstitutionally vague, even as applied to conduct which, like Antonelli's, may fall at the periphery of that proscribed.

Id.

Where, as here, the inmate presents a facial challenge to a prison regulation on due process grounds, the Due Process Clause requires only that the rule have a "plainly legitimate sweep." See Sweet, 2009 WL 903291, at *8. The BOP rule prohibiting "engaging in or encouraging a group demonstration" plainly does. Additionally, PAC 212 passes constitutional muster under the standard

applied by the Supreme Court to criminal statutes. A person of ordinary intelligence would understand that PAC 212 prohibits a prisoner from participating in or encouraging a protest by a group of inmates. Further, its terms are sufficiently clear to limit arbitrary and discriminatory enforcement. Additionally, considering First Amendment concerns, there is a rational connection between PAC 212 and the legitimate governmental interest of maintaining secure prisons; and there are alternative means by which an inmate may exercise his or her First Amendment right to complain about the conditions of confinement without encouraging other inmates to engage in a group protest, for example, filing administrative grievances or a civil rights complaint, or both. Therefore, the undersigned rejects Petitioner's facial challenge to PAC 212 as unconstitutionally vague.

Additionally, to the extent Petitioner asserts an as-applied challenge, his claim is without merit. As the DHO found, while institutional security staff was investigating a report of a planned assault on a staff member that quickly evolved into a group demonstration by the inmates housed in the C-block unit, including an organized food strike, Petitioner Robles was one of several inmates observed by a staff member talking to inmates from other housing units through interior doors and then going to other inmates in their own housing units and instructing them not to eat breakfast the next day. Robles' conduct was the kind of quintessential "encouraging a group demonstration" expressly proscribed by Code 212. Therefore, Petitioner's vagueness challenge to PAC 212 fails.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that N.C. English is substituted for Paige Augustine as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That Petitioner's motion for summary judgment (doc. 14) be **DENIED**.

3.      That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 18th day of June 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE  JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).